PRADO, Circuit Judge, specially concurring:
I concur in nearly all of the court’s opinion. I write separately only to note that I do not interpret our two-part test for the propriety of a residential placement as departing from that of the other circuits that have addressed this issue. As I read Kruelle v. New Castle County School District and its progeny,[1] our two-part test *303 formalizes the practice of our sister circuits.
Our test first asks whether the residential placement is essential for the child to receive a meaningful educational benefit. This, to me, is the Kruelle standard. Though linguistically obtuse, Kruelle essentially asks a straightforward question: Does the child, because of her disability, require a residential placement to obtain the meaningful educational benefit to which she is entitled? By requiring that the placement be essential, our first prong asks the same question and closely tracks the better enunciations of the Kruelle standard.[2] As I see it, then, today’s opinion joins our fellow circuits in adopting the general Kruelle standard.
Our test also asks whether the particular residential placement in question is primarily oriented toward enabling the child to obtain an education. This is a necessary limitation on Kruelle’s potentially expansive scope, as Kruelle asks only whether the placement is necessary. Even when a child requires a residential placement, the court must still ensure that the placement in question is proper before requiring the school district to fund it. Our test accomplishes this task by limiting reimbursement to those residential placements that are primarily oriented toward enabling the child to obtain an education, keeping in mind of course the IDEA’S broad conception of education. And while not technically part of the standard itself, this limitation is one that other courts have already placed on Kruelle. That is, courts applying Kruelle have not ceased their analysis upon determining that some residential placement is necessary. They have instead gone on to determine whether the particular placement for which the parents are asking to be reimbursed is itself proper.[3] The second step of our test, then, is also consistent with the approach of other circuits.
In brief, the test we adopt today is consistent with that of our sister circuits. I therefore concur.

. 642 F.2d 687 (3d Cir.1981); see Abrahamson v. Hershman, 701 F.2d 223 (1st Cir.1983); Mrs. B. ex rel. M.M. v. Milford Bd. of Educ., 103 F.3d 1114 (2d Cir.1997); Burke County Bd. of Educ. v. Denton ex rel. Denton, 895 F.2d 973 (4th Cir.1990); Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466 (6th Cir.1996); Ind. Sch. Dist. No. 284 v. A.C. ex rel. C.C., 258 F.3d 769 (8th *303 Cir.2001); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635 (9th Cir. 1990) (per curiam); McKenzie v. Smith, 771 F.2d 1527 (D.C.Cir.1985); see also Jefferson County Bd. of Educ. v. Breen, 853 F.2d 853 (11th Cir.1988).

. See A.C., 258 F.3d at 774 ("[T]he IDEA requires that a state pay for a disabled student's residential placement if the student, because of his or her disability, cannot reasonably be anticipated to benefit from instruction without such a placement.”); Mrs. B., 103 F.3d at 1122 ("In deciding if a school must fund a residential placement, the court must determine whether the child requires the residential program to receive educational benefit.”).

. See, e.g., A.C., 258 F.3d at 777-79 (finding that a residential placement was necessary for a child and remanding to determine whether the particular placement was appropriate); Clovis, 903 F.2d at 641-47 (denying reimbursement for an inappropriate placement even though both parties agreed that a residential placement of some kind was necessary).